### THE FELIX.

### WRIGHT et al. v. THE FELIX.

(District Court, E. D. Pennsylvania. July 20, 1894.)

No. 18 of 1893.

1. SALVAGE COMPENSATION—EXPENSES.
    A salvage undertaking is a speculative venture in which there is no reward if nothing is saved to the owner; and hence, if a claimant appears, the salvors are not entitled to the entire proceeds, even if they have necessarily incurred expenses exceeding the same.

2. SAME.
    A steel vessel moored alongside a vessel laden with oil was withdrawn from a burning wharf by tugs, but sank immediately afterwards. The tug owners then claimed a right, by virtue of their salvage service, to raise the vessel, which they did at an alleged expense of $20,000, besides their services. The vessel sold under order of court for only $10,560. Held, that the salvors should receive but two-thirds of the proceeds, although this fell short of their expenses necessarily incurred.

This was a libel by Wright and others against the bark Felix to recover salvage.

Biddle & Ward, for libelants.
Flanders & Pugh, for respondent.

BUTLER, District Judge. On October 30, 1892, the bark Felix, a steel vessel of near 1,000 tons, was at the Atlantic Refining Company's wharf, Point Breeze on the Schuylkill, awaiting a cargo of oil. An explosion occurring near by, the flames which followed set fire to the wharf and bark, and also to the Elena G, another vessel moored outside her, laden with a cargo of refined petroleum. Both vessels were in danger of destruction, and while burning were pulled out from the wharf by the efforts of several tugs which came to their aid. The rigging of the vessels was so entangled that it was difficult to separate them. It was however accomplished, and water

was thrown on the fire until it was under control. When the Felix reached the opposite side of the channel the ballast shifted, and from this cause, and the influence of a high wind, she sank in about 30 feet of water, lying nearly across the channel, where it was narrow. She thus remained, in the way of navigation, until the following Monday, when the libelants proposed to raise her, claiming a right to do so because of what they had previously done on her behalf. The officer in charge assented. There was no contract of employment, or request on behalf of the bark that the libelants should do the work, but simply an assertion of right by the libelants to do it, and an assent that they should, on behalf of the bark. I do not mean to intimate that the result would be different if this were otherwise. The condition of the vessel, the extent of her injuries, and her value at the time, were unknown. Subsequently it was ascertained that her plates were warped, some of them broken, and that she had filled with water and was of comparatively little value. After the expenditure of much time, cost and labor, she was raised. At a sale under an order of the court she produced $10,560. The libelants claim to have expended over $20,000 about the work, independently of the time and labor devoted to the service. Whether this claim is just, or too high, need not be determined. I am satisfied the proper and necessary expenditures exceed any award that can be made the libelants. The respondent charges that the libelants were unskillful, occupied much unnecessary time, and rendered the work unnecessarily expensive. I do not think the libelants were unskillful. They had experience in such work; and although the means first employed by them proved ineffectual it could not be known in advance that they would do so. In judging of the wisdom or propriety of what they did the situation must be viewed as it appeared at the time, and not in the light of subsequent events. If unnecessary expenses were incurred or unnecessary time occupied in doing the work, (and I am not satisfied there were,) no loss can result to the respondent therefrom, for the reason before stated, that the largest sum that can be awarded from the proceeds of sale will fall short of even the expenses necessarily incurred.

It is conceded that the libelants are entitled to salvage compensation. The controversy is about the amount. The libelants claim to be reimbursed in full for the expenses incurred, and consequently to be awarded the entire proceeds of sale.

In determining the question thus raised the principles on which the right to salvage compensation rests must be kept in mind. A statement of these principles may be found in any elementary work on the subject. They prevail only in the admiralty. To the common law the doctrine is unknown. Voluntary services rendered to the property of another on land afford no ground for a claim of compensation; while similar services rendered for the preservation of property at sea are entitled to a liberal reward. As said by Mr. Kennedy in his work on Civil Salvage (pages 4, 5):

"The origin of the salvor's right is to be found in the Roman law, which gave to one who preserved or improved the property of another without his

request, and even without his knowledge, a title to compensation from the owner."

In the case of The Calypso, 2 Hagg. Adm. 209, Sir Christopher Robinson said:

"It will be found, I think, that both these forms of salvage (civil and military) resolve themselves into the equity of rewarding spontaneous services, rendered in the protection of the lives and property of others. This is a general principle of natural equity; and it was considered as giving a cause of action in the Roman law; and from that source it was adopted, by jurisdictions of this nature (the admiralty) in the different countries of Europe. This is the account which Sir Wm. Wiseman, who was a judge of this court, gave of the origin of salvage. He says 'Upon the equity hereof is that proceeding in the admiralty court clearly justified, whereby, if a ship, being set upon by pirates or by enemies, shall be rescued by another ship seasonably coming to her rescue, it charges the ship that is then redeemed with salvage money to the other;  *  *  *  that recompense being but in lieu of all damages thereby sustained, and for future encouragement to others to fight in the defense of those that they see assailed.' Considering all salvage, therefore, to be founded on the equity of remunerating private and individual services, a court of justice should be cautious not to treat it on any other principle."

But what is the rate or measure of compensation? There is no certain measure applicable to all cases. The expenditures, risks and losses incurred, and the time, labor and skill employed, are to be considered, and where the property saved justifies it a liberal allowance is to be made, sufficient not only to reimburse and compensate the salvor, but to encourage such services and undertakings. There is a limit however which the court cannot transcend. The entire property cannot be awarded; otherwise no benefit is conferred by the services on the owner; and as we have seen, such benefit alone confers the right to compensation. If nothing is saved no compensation is earned; if something is saved, but insufficient to compensate the salvor, and leave a material part for the owner, the former must share the loss, with the latter. He assumes the risk of such loss in consideration of the liberal compensation he will receive if successful. The undertaking is a speculative venture, which may result in great profit, or serious loss. Mr. Kennedy says at pages 114 and 115:

"There is no absolute rule or fixed scale of remuneration. The amount of the award, unless it has been ascertained, as it may be, by agreement, is dependent on the discretion of the court, and must from the nature of the case, always be more or less 'rusticum judicium.' The amount of salvage award, said Dr. Lushington in The Cuba, Lush. 14, is not to be determined by any rules; it is a matter of discretion; and probably in this or any other case no two tribunals would agree. There is no jurisdiction known which is so much at large as the jurisdiction to award salvage compensation. There is none in which so many circumstances are to be considered for the purpose of determining the amount. It may be taken however as a general rule that in no case, where the owner of the salved property appears, will the court award more than a moiety of its value. 'I do not know a case,' said Sir John Nicholl in 1834, '(except for salvage of the king's ships, or where the property is small and unclaimed), where the court has exceeded a moiety.' In 1884, Brett, M. R., in The City of Chester, 9 Prob. Div. 186, stated the practice in these terms: 'Even in the case of derelict the admiralty has scarcely ever, under any circumstances, (and in no case of nonderelict has ever) awarded

for salvage more than one-half the property saved.' In The Erato (1888) 13 Prob. Div. 163, which was not a case of derelict, Butt, J., awarded salvors £2,000 out of a fund of £3,500. But this was very exceptional."

Carver on Carriage by Sea (section 345) says:

"Where the salving vessel has sustained injury, or her owner has lost earnings, through rendering services of value to the owners of the property saved, and where that property is ample, not only to defray the losses thus sustained by the owner, in addition to a proper sum for the services of the master and crew, but also to leave a·substantial surplus, then the amount awarded to the owner of the salving vessel ought to be enough to cover his actual loss, and also whatever additional risk he ran.

"But regard is always paid to the value of the property saved; and an award will not be made of such an amount as to deprive its owners of the benefit of the service, with the view of recouping to the salvors their losses. It is one of the risks they run, that they may not be indemnified for their sacrifices. It is said that the court of admiralty has hardly ever, and then only in the case of a derelict, awarded as salvage more than half the value of the property saved."

See, also, the remarks of Brett, J., in The City of Chester (court of appeals, 1884) 9 Prob. Div. 182.

The libelants concede that only a part of the property saved can be awarded for services rendered in saving it, but draw a distinction between compensation for time, labor, skill and other personal services, and compensation for expenditures made in performing the work. I do not however find anything either in reason or the authorities to sustain this distinction. In ascertaining what is a proper allowance in a given case the court examines these two sources of claim separately, not because there is any difference in their respective merits or character, but because it leads to greater certainty. The proper remuneration for expenditures can be ascertained with exactness, while that for the personal services referred to, risk, etc., cannot. It is therefore wise thus to consider them. There is however no other reason for distinguishing them. The one is of no higher equity than the other. No authority is found for the distinction set up. No elementary work recognizes, and no decision found rests upon it. What is said in Murphy v. Dunham, 38 Fed. 503, is unimportant. A part is inapplicable here while the remainder is but a passing observation of the judge, which does not enter into the decision; it does not indeed arise out of the case presented, but out of a supposed case which might have been presented. The decisions in derelict cases cited are inapplicable. They rest on an exception, confined to such cases, where no claimant appears. The distinction set up here did not enter into them: the award was for the personal services as well as the expenditures, and rests alone on the fact that the property was very small and that no claimant appeared. The circumstance that these cases establish an acknowledged exception to the general rule, which has been steadily confined to the facts on which they rest, presents of itself a persuasive argument against the libelants' position. The argument is reinforced by the fact that the question has not heretofore been presented. Numerous cases must have arisen which would as well have justified its presentation as this.

Mr. Kennedy at pages 138 and 139, in summing up the result of the decisions respecting compensation, says:

"The effect of these judgments, fairly read together, appears to be that whilst the amount of damage, expense, or loss of profits, ought not, under any circumstances, to be taken as 'fixed figures' or 'moneys numbered,' to be added to the amount of the award for actual services, the fact that such damage, expense or loss has been caused in performing the service is a fact which the court ought never to disregard in ascertaining the amount of the award. But all the circumstances, of which this is only one, must be considered together; and it does not follow, necessarily, that because the salvor proves such damages, expenses or losses, the court should fix the sum awarded high enough to cover them. On the contrary the service may itself be so trivial as to make it unjust, or the property saved may be so small in value as to make it impossible to cast the burden of such an indemnity upon the owner; and if the court sees that this is the case it may properly refuse to receive evidence as to the particulars of damages, expenditures, and loss of earnings or profits, incurred by the salvor. Where however meritorious salvage services have caused the salvors serious pecuniary loss, and where the property saved is ample not only to defray this loss sustained, in addition to an adequate sum for salvage proper, but also to leave a substantial surplus for the owner of the property saved, the salvor should be remunerated with a sum sufficient both to reward him for his risk, labor, skill and conduct, and also to cover damage, expenses, and losses incurred in rendering the services."

Disregarding the distinction which the libelants have set up, what compensation should be allowed in this case? The circumstances are extraordinary. After considering them fully I believe the libelants should have two-thirds of the proceeds of sales less costs. While this sum falls short of a full compensation, it is as much as the value of the property saved will justify the court in awarding. The libelants' loss is the consequence of risk which they voluntarily assumed on undertaking the work. It is a proper source of regret; but not more so than the loss sustained by the respondent.